IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SEBASTIAN M. McMILLIAN, *
Plaintiff,
v. * CIVIL ACTION NO. DKC-15-1882

BRANDON CAPLE, et al., *

Defendants. *
***

**MEMORANDUM OPINION**

Pending is a Motion to Dismiss, or in the alternative, Motion for Summary Judgment filed by Brandon Caple, Lieutenant Michael Oates, Captain Joseph Cutter, Former Chief of Security Keith Arnold, and Former Warden Bobby Shearin. ECF No. 9. Plaintiff has responded. ECF No. 11. Upon review of the papers and exhibits filed, the court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated below, the dispositive motion will be granted.

Background

The case was instituted upon receipt of a civil rights complaint filed by Plaintiff Sebastian McMillian, a state inmate confined at the North Branch Correctional Institution ("NBCI"). ECF No. 1. Plaintiff claimed that in 2011 he purchased finger nail clippers from the prison commissary at NBCI. *Id.*, ¶ 10. In June of 2012, Chief of Security Arnold banned NBCI inmates from purchasing or possessing finger nail clippers. *Id.*, ¶ 11. On November 1, 2012, Plaintiff's cell was searched by Caple who discovered nail clippers concealed in the battery compartment of Plaintiff's CD player. *Id.*, ¶ 12. As a result, Plaintiff was placed on disciplinary segregation, and his nail clippers, CD player, and other personal property were confiscated. *Id.*, ¶¶ 13-14.

Plaintiff states that Caple fabricated a disciplinary report charging him with possession, use, and manufacturing of a weapon, in retaliation for Plaintiff's having failed to relinquish the nail clippers as directed in Arnold's memo. *Id.*, ¶ 15. Oates and Cutter, reviewed Caple's report,

and recommended approving Caple's charges, including the confiscation of Plaintiff's property. *Id*., ¶¶ 16-18.

A disciplinary hearing was held on November 15, 2012, before Hearing Officer Mack, after which Plaintiff was found guilty of the charges. *Id*., ¶ 19. Plaintiff maintains that Mack knew the evidence was insufficient and retaliatory and that he "maliciously based his finding of facts on both insufficient evidence and fabricated reports." *Id*., ¶ 21. Plaintiff was sentenced to 180 days disciplinary segregation and indefinite loss of visitation *Id*., ¶ 22. Former Warden Shearin approved the result of the disciplinary hearing. *Id*., ¶ 23.

Plaintiff alleges that Shearin, as the Warden at NBCI, was charged with overseeing and reviewing all disciplinary proceedings. *Id*., ¶ 5. Shearin was also responsible for overseeing all prison operations and "was present when Arnold disseminated the memo declaring finger nail clipper as contraband" (*id*., ¶ 26) giving tacit support to Arnold and the memo. *Id*., ¶ 27. Plaintiff alleges that neither Shearin nor Arnold had authority under DOC regulations to ban finger nail clippers. *Id*. ¶ 28. He further alleges that Shearin gave tacit support to Caple, Oates and Cutter to fabricate and approve the filing of false charges against him regarding the nail clippers. *Id*., ¶ 29.

As a result of the disciplinary proceedings, Plaintiff states that he lost earned good time credit, was deprived of his job, back pay, and ability to earn good conduct credits. He also maintains that the deprivation of his nail clippers limited his ability to maintain proper hygiene resulting in an infection to his toe nails. He also alleges he was deprived of the opportunity to retain a job and reduce his security level. *Id*., ¶¶ 34-38.

Defendants agree that on June 29, 2012, NBCI Chief of Security Arnold issued a memorandum advising that fingernail clippers had been used to manufacture weapons and that

any inmate who possessed fingernail clippers must relinquish them by July 13, 2012; thereafter the clippers would be considered contraband and inmates in possession of clippers would be served with an inmate rule violation. ECF No. 9-4, p. 34.

On November 1, 2012, Caple searched Plaintiff's cell and discovered fingernail clippers concealed in the battery compartment of a Sony CD Player which Plaintiff claimed he owned. ECF No. 9-5, p. 18. That same day Plaintiff was charged with violating inmate rules 105 (possession of a weapon or any article modified into a weapon; the unauthorized possession of any implement, article, or tool that reasonably could be modified into or used as a weapon) and 406 (possessing, passing, or receiving contraband). *Id*.

Plaintiff appeared before Hearing Officer Stephen Mack on November 21, 2012. After the hearing, where Plaintiff plead guilty to violation of rule 406, he was found guilty of violating both inmate rules and sanctioned to 180 days of disciplinary segregation and indefinite loss of visitation. *Id*., pp. 23-24. In finding Plaintiff guilty of violating rule 105, Mack noted the June 28, 2012 memorandum designating that nail clippers must be turned in or else would be treated as contraband and also cited "COMAR 12.02.27.04 H which provides "The term weapon under subsection B(6)-(2) An unauthorized material, substance, article, instrument, or tool that may be manufactured into or used as weapon regardless of it being used for a purpose other than as a weapon or whether its original character has been altered." *Id*., p. 24. No good conduct credits were revoked. *Id*., 25. The Reduction in Violence Committee reviewed the sanction, affirming same with the addition of 60 days loss of appliances after Plaintiff's segregation sentence expired. Warden Bobby Shearin affirmed the decisions of the Hearing Officer and RIV Committee. *Id*., p. 1, 14.

On July 16, 2013, Plaintiff filed Administrative Remedy Procedure (ARP) NBCI 1897-13 complaining that his conviction should be vacated. ECF No. 9-7, pp. 5-6; *see also* ECF No. 11, ¶17.[1] The ARP was dismissed on July 17, 2013, on procedural grounds: that inmates may not seek relief regarding disciplinary decision through the ARP process and because it was not received within the established timeframe. *Id*., p. 5. Plaintiff's appeal was also dismissed on the procedural basis that inmates may not seek relief through the administrative remedy process as to the results of disciplinary proceedings. *Id*., p. 1.

Plaintiff filed a grievance with the Inmate Grievance Office, on October 11, 2012, (IGO No. 20122128) as an appeal of ARP-NBCI-1132-12 wherein Plaintiff complained he had been confined on disciplinary segregation for 7 days beyond his sanction. ECF No. 9-8, ¶3(a). The grievance was administratively dismissed by the IGO on December 6, 2012 as untimely. *Id*.

Plaintiff filed IGO No. 20130035 on January 9, 2013, as a grievance appeal of the guilty finding entered at the November 15, 2012 disciplinary proceeding. *Id*., ¶3(b). The IGO dismissed the appeal on March 13, 2013, due to Plaintiff's failure to respond to a letter from the IGO requesting Plaintiff provide supporting documents and advising that failure to respond would result in dismissal of his grievance without further notice. *Id*.

Plaintiff filed IGO No. 20131485 on August 22, 2013, as an appeal of the November 15, 2012 disciplinary proceedings. *Id*., ¶3(c). The appeal was dismissed on October 21, 2013, as repetitive to IGO No. 201130035. Plaintiff filed for judicial review in the Circuit Court for Allegany County which affirmed the decision of the IGO. *Id*.

[1] In his response, Plaintiff indicates he filed his ARP on July 16, 2013. He baldly states "Thereafter I exhausted all available administrative remedies in this matter." *Id*.

Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether

there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Analysis

Inmates are required to exhaust "such administrative remedies as are available" before filing an action. 42 U.S.C. § 1997e(a); *See Ross v. Blake*, _ U.S._, 2016 WL 3128839 * 7 (June 6, 2016) (An inmate "must exhaust available remedies, but need not exhaust unavailable ones."). This requirement is one of "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

Exhaustion is mandatory. *Ross,* 2016 WL 3128839 * 7, J*ones v. Bock*, 549 U.S. 199, 219 (2007). A court may not excuse a failure to exhaust. Ross, 2016 WL 3128839 * 5, citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining"[t]he mandatory 'shall' ... normally creates an

obligation impervious to judicial discretion"). The purpose of exhaustion is to: 1) allow a prison to address complaints about the program it administers before being subjected to suit; 2) reduce litigation to the extent complaints are satisfactorily resolved; and 3) prepare a useful record in the event of litigation. *Jones*, 549 U.S. at 219. An inmate's failure to exhaust administrative remedies is an affirmative defense; defendant bears the burden of proving that Plaintiff had remedies available to him of which he failed to take advantage. *Jones,* 549 U.S. at 211–12, 216; *Moore,* 517 F.3d at 725**.**

In *Ross v. Blake*, 2016 WL 312883914, the Supreme Court of the United States identified three kinds of circumstances in which an administrative remedy is unavailable. First, an administrative procedure is unavailable when, despite what regulations or guidance materials may promise, it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. *Id.* at 7. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 8. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.*

In Maryland, filing a request for administrative remedy with the warden of the prison is the first of three steps in the ARP process. *See* COMAR 12.07.01.04. The ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the inmate first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.07.01.05A. If the request is denied, a prisoner has 30 calendar days to file an appeal with the Commissioner of Correction. COMAR 12.07.01.05C. If the appeal is denied, the

prisoner has 30 days to file a grievance with the Inmate Grievance Office. *See* Md. Code Ann., Corr. Servs. §§ 10-206, 10-210; COMAR 12 07.01.03; COMAR 12.07.01.05B.

Complaints are reviewed preliminarily by the IGO. *See* Md. Code Ann., Corr. Servs. § 10-207; COMAR 12.07.01.06A. If a complaint is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. Md. Code Ann., Corr. Servs. § 10-207(b)(1); *see* COMAR 12.07.01.07B. The order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. Md. Code Ann., Corr. Servs. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* Md. Code Ann., Corr. Servs § 10-208**;** COMAR 12.07.01.07-.08. The conduct of such hearings is governed by statute. Md. Code Ann., Corr. Servs § 10-208.

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. However, a decision concluding that the inmate's complaint is wholly or partly meritorious constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* Md. Code Ann., Corr. Servs. § 10-209(b)-(c).

The final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted his/her remedies. *See* Md. Code Ann., Corr. Servs. § 10-210. But, an inmate need not seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement. *See, e.g.*, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court."); *but see* Md. Code Ann., Cts. & Jud. Proc. Art. § 5-

1003(a)(3) ("Judicial review following administrative consideration shall be the exclusive judicial remedy for any grievance or complaint within the scope of the administrative process.").

In matters involving disciplinary proceedings, an appeal of the hearing officer's guilty finding and/or imposed sanctions must be filed in writing to the warden of the facility where the inmate is confined within 15 days of receipt of the hearing officer's decision. COMAR 12.02.27.33(a)(1) and (2). Where the warden affirms the hearing officer's decision and sanctions, the inmate may file an appeal to the IGO within 30 days of the date that (1) the grievant receives the warden's final response to the appeal, or (2) the warden's response was due to the grievant. COMAR 12.02.27.33(d) and 12.07.07.05(C).

Thus, Plaintiff's claims must be dismissed if Defendants raise the affirmative defense and also prove that Plaintiff has failed to exhaust available remedies. *See Jones*, 549 U.S. at 216 – 17 (failure to exhaust is an affirmative defense and inmates are not required to demonstrate exhaustion in their complaints). Plaintiff does not refute the evidence which shows that he did not fully exhaust the issues raised herein through the administrative process; nor does he dispute his failure to comply with directives from the IGO regarding his filing there. As such, this court must dismiss his lawsuit against the Defendants with prejudice as it is barred by the PLRA.[2]

**Conclusion**

Defendants' dispositive motion will be granted. A separate Order follows.

Date: August 15, 2016

__________/s/_____________________
DEBORAH K. CHASANOW
United States District Judge

---

[2] To the extent Plaintiff's complaint raises state law claims, the court would decline to exercise supplemental jurisdiction. *See* 28 U.S.C. §1367(c)(3); *United Mine Workers v. Gibbs*, 383 U. S. 715, 726 (1966).